## Hone *v.* Dillon.

*(Circuit Court, S. D. Georgia, E. D. November 30, 1886.)*

1. **Removal of Causes—Citizenship—Act of Congress of March 3, 1875.**

Under the act of March 3, 1875, a suit cannot be removed from a state court unless the requisite citizenship of the parties existed both when the suit was begun and when the petition for removal was filed.

2. **Same—Act of Congress of March 2, 1867.**

Under the act of March 2, 1867, it is not necessary that the parties should have been citizens of different states at the time when the suit was brought, if they are citizens of different states when the petition for removal is filed.

3. **Same—Final Hearing—Demurrer Overruled—State Equity Rules.**

Where the rules of procedure in equity of a state provide that a demurrer shall be disposed of at the first term, and the second shall be the trial term, the hearing of a demurrer to a bill, and an order overruling it, is not such a final hearing of the cause as will defeat a removal.

4. **Same — Death of Non-Resident Defendant—Bill of Revivor by Executor.**

A bill of revivor is a mere continuation of the original suit, and, where the jurisdiction of the court had completely attached to the controversy, it cannot be divested by the death of the non-resident defendant, and his executor has the right to defend the suit without regard to his own citizenship.

*(Syllabus by the Court.)*

In Equity. Motion to remand.

*R. R. Richards,* for movant.

*John M. Guerard* and *Charles N. West, contra.*

SPEER, J. This bill was originally filed in the superior court of Chatham county. It was removed to this court by the proceeding under the act of March 2, 1867, relating to local prejudice, on the fourteenth day of February, 1882. Since that time various orders have been taken in its progress here. An amendment has been filed to the bill; a demurrer to the bill as amended; this demurrer has been overruled; an answer to the bill as amended has been filed; and the defendant having died, his death has been suggested, and a bill of revivor has been filed against his executor. A motion to remand the cause to the state court is now made by the complainant, William Hone. It is insisted by the movant, himself a citizen of Georgia, that at the time the suit was begun David R. Dillon was a citizen of the same state; and, notwithstanding the fact that he had become a citizen of the state of New York, and was a citizen of the latter state at the time the cause was removed to this court, that Dillon was not entitled to remove the cause.

This question is not free from difficulty. It has been repeatedly held that a suit cannot be removed from a state court under the act of March 3, 1875, unless the requisite citizenship for removal existed when the suit was begun as well as when the application for removal was made. *Akers* v. *Akers,* 117 U. S. 197; S. C. 6 Sup. Ct. Rep. 669; *Gibson* v. *Bruce,* 108 U. S. 562; S. C. 2 Sup. Ct. Rep. 873. In the latter case Mr. Chief Justice WAITE, delivering the opinion of the court, considers section 12 of the judiciary act of 1789, and the act of 1875. With relation to the act of 1875, he declares that it is "radically different from any which preceded it. Under that act, either party may petition for removal, and neither party need be a citizen of the state in which the suit was brought. The material language is as follows: 'That any suit of a civil nature, at law or in equity, now pending, or hereafter brought, in any state court, * * * in which there shall be a controversy between citizens of different states, * * * either party may remove said suit into the circuit court of the United States for the proper district.' In order to obtain the removal, a petition therefor must be filed in the state court at or before the term at which the cause could be first tried, and before the trial. In the present case the petition was not filed until nearly two years after the commencement of the suit. The construction of the act is by no means free from doubt, but, on full consideration, we are of opinion that the requirements of the old law, that the necessary citizenship should exist when the suit was brought, was not abolished. We cannot believe it was intended to allow a party to deprive a state court of the jurisdiction it once has rightfully acquired over him by changing his citizenship after a suit is begun; and that would be the effect of the law if the right of removal is made to depend only on the citizenship existing at the time a removal is applied for. But we are also of opinion that because of the extension of the time for applying for a removal, and because neither party

need be a citizen of the state in which the suit is brought, and either party may apply, it was the intention to provide that the controversy should be between citizens of different states at the time of the removal. In this way the jurisdiction of the circuit court of the United States will only attach when there shall be a controversy between citizens of different states at the time the suit is transferred, and the right to the transfer will depend on the citizenship when the suit was begun, and when the petition for removal is filed. We therefore hold that a suit cannot be removed from a state court under the act of 1875, unless the requisite citizenship of the parties exist both when the suit was begun and when the petition for removal is filed."

It will be observed that in the foregoing decision the act of March 2, 1867, was not considered by the court. They decide the effect of the act of March 3, 1875. When reference is made by the chief justice to the old law, allusion I think is had to the act of 1789, which is mentioned in a preceding paragraph of the opinion. Had he referred to the act of March 2, 1867, the question would not be open. There has been no decision by the supreme court of the United States upon the precise question in this case; but the supreme court of Georgia in *Hammond* v. *Buchanan*, 68 Ga. 729, have held that it is not essential that the applicant should have been a non-resident of the state at the date of the commencement of the suit, to entitle him to remove a cause to the United States court on the ground of local prejudice, under the act of congress of 1867. This conclusion is entitled to great respect, and is supported by repeated decisions of the federal courts. When that case itself reached the circuit court of the United States for the Northern district of Georgia, a motion to remand was made before his honor Judge McCay; and, after very exhaustive argument, was overruled by that eminent jurist. The decision was not reported, but I was at that time a member of the bar of that court, and heard the argument and the decision.

In *Cook* v. *Whitney*, 3 Woods, 715, it was held that to warrant a removal of a cause from the state to the federal court, under the act of March 2, 1867, it is not necessary that the parties should have been citizens of different states at the time when the suit was brought, provided they are citizens of different states when the petition for removal is filed; citing the opinion of Mr. Justice MILLER in *Johnson* v. *Monell*, 1 Woolw. 390.

The reason of the act would seem strongly support this conclusion. It became the law at a period of angry sectional feeling, and great prejudice in certain localities against citizens of other portions of the country. It might have been frequently true that one who had been a citizen of a state became involved in litigation, and, as a consequence, found it desirable and beneficial to change his domicile. It is not impossible that the law-making power had under contemplation exiles of this enforced character. Unlike the act of 1875, the

act of 1867 did not make it competent for a citizen of the state where a suit is brought to remove the cause; this is the privilege of the non-resident plaintiff or defendant. A removable suit under the latter act is one "in which there *is* a controversy between a citizen of the state in which the suit is brought and a citizen of another state." Can it be supposed that it was intended by congress to deprive of the right to remove their causes to the national courts a large class of individuals who, at this unsettled period of the country's history, found it necessary, pending litigation in which they were interested, to remove to other states? I think not. Besides, the statute was remedial, and should therefore have a liberal construction.

It is said, however, that the final hearing had been begun, because a demurrer had been disposed of in the state court, and the cause there referred to a master. From an examination of the record, it appears that the demurrer was special, in that it assigned defects in the statement of certain sums in the bill; it was general, in that it declared that the complainant "hath not in and by his said bill stated such a case as doth or ought entitle him to any such relief as is thereby sought," etc. The demurrer was overruled on both grounds by his honor Judge FLEMING, presiding in the state court. The act declares that the cause may be removed if the petition of the party is filed at any time before the trial or final hearing. Is a demurrer to a bill in equity, and the decision overruling the same, under the equity procedure of Georgia, such a final hearing as that contemplated by the statute above quoted?

"The trial term of all equity causes shall be the second term after service has been perfected on all the parties." Code Ga. § 4205; *Cook* v. *Board of Commissioners*, 54 Ga. 166. "A defendant may either demur, plead, or answer in a cause in equity, or may file two or all these defenses at once, without waiving the benefit of either. In all cases, demurrers, pleas, and answers shall be disposed of in the order named, and all demurrers and pleas shall be filed and determined at the first term," etc. Code Ga. § 4191.

In view of the statutes, clearly the hearing of a demurrer cannot be the final hearing. *Insurance Co.* v. *Dunn*, 19 Wall. 224, 225; *Vannevar* v. *Bryant*, 21 Wall. 41–43. Both of these cases arose under the act of March 2, 1867, and are clearly distinguishable from *Alley* v. *Nott*, 111 U. S. 474, S. C. 4 Sup. Ct. Rep. 495, and *Gregory* v. *Hartley*, 113 U. S. 742, S. C. 5 Sup. Ct. Rep. 743, which arose under the act of 1875.

But it is said that the present defendant is the executor of Dillon, and is himself a citizen of Georgia, and for that reason the cause must be remanded. A sufficient reply to this proposition is found in the decision of *Clarke* v. *Mathewson*, 12 Pet. 170. There, as in the case under consideration, a bill of revivor had been filed in continuation of the original suit; and the court held, Mr. Justice STORY delivering the opinion, that, if the plaintiff was competent to sue the

defendant in the circuit court, his representative, though a citizen of the same state, may revive it,—the court holding, against the argument of Daniel Webster, who was of counsel for the appellees, that the bill of revivor was in no just sense the original suit, but was a mere continuance of the original suit, and, where the jurisdiction of the court had completely attached to the controversy, it could not be divested by any subsequent events, and that the administrator or executor of a deceased party, under the thirty-first section of the judiciary act, (1 St. at Large, 90,) has power to prosecute or defend an action by or against the deceased, without regard to his own citizenship. It may be of consolation to counsel of movant here to reflect that Judge STORY held with him in the circuit court, and not until mature reflection did he change his opinion.

For the reasons given the motion to remand is denied.